### MIDDLETON v. TWOMBLY et al.

*(Superior Court of New York City, General Term. February, 1890.)*

LIMITATION OF ACTIONS—RUNNING OF STATUTE—IMPLIED TRUSTS.

Between 1861 and 1865, a merchant in China shipped goods to another in New York, under an agreement whereby the New York merchant was to pay all necessary expenses, including insurance, and to receive one-half of the net profits, which agreement was sometimes varied by the payment of fixed commissions. The New York merchant was alone known in these transactions, and between 1864 and 1867 he received various sums as rebates on insurance previously paid by him. *Held* that, whether considered as a partner or as a factor, the New York merchant, on the receipt of the rebates, became clothed with an implied trust to pay them to the Chinese merchant without demand, and that consequently the statute of limitations began to run from the receipt of the rebates, and not from the time of demand by the Chinese merchant.

Appeal from special term.

Action by John Middleton against Horatio N. Twombly and Elizabeth Fogg, as executors, etc., of William H. Fogg. The trial court directed a verdict in favor of plaintiff. Defendants' motion for a new trial on the minutes was granted by O'GORMAN, J., upon the following opinion:

"This is a motion for a new trial on behalf of the defendants; the trial judge having directed a verdict in favor of the plaintiff. The action was for money of the plaintiff had and received by William H. Fogg, the defendants' testator, at various times between February 2d, in the year 1864, and February 8th, in the year 1867. Action was commenced in the year 1889, and the main defense is that the claim was barred under the statute of limitations. The material facts are these: In 1861 the plaintiff was a merchant residing and carrying on business in China, and William H. Fogg was a merchant residing and carrying on business in the city of New York. They entered into an agreement, not in writing, whereby the plaintiff was to ship merchandise from China consigned to Fogg in New York, and Fogg was to receive the merchandise in New York, pay freight, premiums on fire, maritime, and war insurance, and all other necessary expenses, and sell the merchandise, and remit one-half of the net proceeds to plaintiff after charging against the adventure all said expenses, including payment of said insurance, and retaining the other half of said net proceeds as his (Fogg's) share. This mode of dealing, which had in it the elements of a partnership, was on some occasions varied by payment of fixed commissions to Fogg instead of a half share of the net profits. Fogg from time to time rendered statements and accounts to plaintiff, which were accepted by the plaintiff as correct. In January, 1865, these transactions wholly ceased; and, so far as appears, after that date the parties had no further dealings or correspondence with each other. From time to time between February 2, 1864, and February 8, 1867, Fogg received various sums of money from said insurance companies as rebates of sums paid them by Fogg as premiums on said insurance on said merchandise consigned to Fogg by the plaintiff, of which receipt of said money Fogg never informed the plaintiff; and Fogg never remitted to plaintiff any part of said money so by him received, but retained the same in his possession. Fogg died in 1884. In 1887 the plaintiff for the first time became aware that such rebates had been made, and such moneys paid to Fogg on account of the same. The plaintiff sues for his share of the moneys so paid to Fogg as being his money in the hands of Fogg, and which Fogg was, in equity and good conscience, bound to pay over to the plaintiff. The defendants, Fogg's executors, claim that the plaintiff's action accrued at the time when these moneys on account of rebates were received by Fogg. The latest of these receipts of said moneys was February 8, 1867. If they are right in that claim, the plaintiff's action is barred under the statute of limitations, and the direction of the judge to the jury to find a verdict in favor of the plaintiff was error, and the com-

plaint should have been dismissed. The plaintiff contends that his cause of action did not accrue until the demand made on the executors in September, 1888, in which case the verdict should stand.

"It is not easy to gather from the numerous judicial decisions any rule of law on the subject of general application. Each case must stand by itself, and in each the question must be considered according to its own special facts. In the case at bar the insurance companies were justified in paying these rebates into the hands of Fogg. He had transacted all the business of these shipments in New York under his own business name of Fogg Bros.; and he alone was known in New York in relation to said shipments, and had the possession and apparent ownership of the merchandise. Fogg was justified in receiving the payments of such rebates from the insurance companies. As to the payments made to him before January, 1865, and while the agreement between him and plaintiff was still in force, Fogg had an undoubted right to receive them. As to the payments made on account of these rebates after the cessation of all dealings between the plaintiff and Fogg, Fogg was justified in receiving the money *ex necessitate,* because no one but he had any apparent right to receive it in New York; but by receiving it he assumed the responsibility of transmitting to the plaintiff, with all reasonable speed, such share of the moneys as he knew was the property of the plaintiff, and he constituted himself the trustee of the plaintiff for that purpose, and to that extent. I do not see why, in order to constitute a cause of action, a demand should have been made by the plaintiff on Fogg for plaintiff's share of that money. The object of such demand is to apprise the defendant of the duty he is required to perform, and give him an opportunity to perform it. But, where a trustee is himself an actor in the transaction, and has full knowledge of his duties, such notice and demand are not required. Abb. Tr. Ev. (Ed. 1880,) pp. 234, 235; *Brent* v. *Maryland,* 18 Wall. 430, 434; *Jessop* v. *Miller,* 2 Abb. Dec. 449; *Stacy* v. *Graham,* 14 N. Y. 497. The weight of authority seems to me to sustain that view of the question. *Howard* v. *France,* 43 N. Y. 593; *In re Cole,* 34 Hun, 320; *Knapp* v. *Simon,* 96 N. Y. 288, 294; *Pierson* v. *McCurdy,* 100 N. Y. 608, 2 N. E. Rep. 615; *Price* v. *Mulford,* 107 N. Y. 308, 14 N. E. Rep. 298. The provisions of the Code of Procedure in point in this case were the same as are found in the Code of Civil Procedure, §§ 380, 382. Section 410 of the Code of Civil Procedure is new, and is not found in the Code of Procedure which was in force at the times the moneys in rebate of premiums on insurance were paid into the hands of Fogg. I have read and considered the authorities cited on behalf of the plaintiff on this subject. In my opinion the weight of the argument is on the side of the defendants. Looking at the question merely as one of mercantile ethics, it would seem unjust and improper that a merchant receiving money which he knew to belong to another should be justified in retaining that money,—in keeping secret the fact that he had received it, and had it in his possession,—and that no legal obligation or responsibility on his part to the lawful owner of the money should accrue until formal demand had been made on him by the owner. In my opinion the obligation and cause of action accrued at the moment the money was received. The result of these views is that the plaintiff's cause of action against Fogg accrued in 1867, when the last of these rebates was paid into the hands of Fogg; and the action is long since barred by lapse of time.

"As to the instances in which the rebates were paid into the hands of Fogg while he received a fixed commission on the sales instead of a share of the net profits, the plaintiff claims that Fogg was acting as a 'foreign factor.' I see no reason to think that any other or different rule would prevail if Fogg had been a factor or other agent. He would have had, no doubt, a lien on the money for any sums justly due to him for commissions or otherwise; but the money in no wise belonged to him, but, except as to that lien, it belonged

to the plaintiff absolutely. *Baker* v. *Bank*, 100 N. Y. 33, 2 N. E. Rep. 452. No commissions were in fact due and unpaid, and the factor or agent held the moneys on an implied trust for his principal, to whom they all belonged. *Ross* v. *Curtis*, 30 Barb. 240. A factor does not receive the proceeds of sales of the property of his principal as his own money, but as the money of his principal. Edw. Brok. & F. § 92. But in the case at bar the money received by Fogg from the insurance companies was not any part of the proceeds of the sales which he had effected, and on which he had a lien. It was money which, although arising indirectly out of the transaction in which he may have acted as factor, was unexpected and fortuitous, and derived out of an extraordinary rebate of moneys paid after the factor had been completely paid for his services. As in the other cases, the money was paid into the hands of the factor because there was no one else in New York who had an apparent right to receive it, and when paid it was, in his hands, the property of the plaintiff; and the factor was charged with the implied trust to remit it to the true owner with all reasonable dispatch. In my opinion, Fogg did not, as to the receipt of these moneys, act in the capacity of foreign factor, but only as trustee for the plaintiff, and under the obligation of remitting the money to the plaintiff when received. No demand was necessary to constitute a cause of action against Fogg. The money was not his money, but the money of the plaintiff, and the plaintiff had a cause of action against Fogg without any demand.

"It may be that these views of this action tend to work a hardship on the plaintiff, and defeat a claim which is in itself meritorious. But that is the result of the inherent defect of legislation which fails to anticipate and provide for all the various new conditions which present themselves in the ever-varying transactions of men. There must be a new trial, with costs to abide the event of the action."

Argued before TRUAX and DUGRO, JJ.

*Norwood & Coggeshall*, for appellant. *Joseph W. Howe*, for respondent.

PER CURIAM. The order appealed from is affirmed, with costs and disbursements, on the opinion of the court below.

---

### HERDER *v.* WALTHER.

(*Common Pleas of New York City and County, General Term.* February 3, 1890.)

CHATTEL MORTGAGES—FILING COPY.

> A chattel mortgage which has "ceased to be valid," as against purchasers and creditors, by failure to file a copy of the mortgage within 30 days next preceding the expiration of the year after the mortgage was filed, as required by 3 Rev. St. N. Y. p. 2249, cannot be revived by filing the copy after the expiration of the year.

Motion for leave to appeal to the court of appeals.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*H. A. Sperry*, for plaintiff. *Jeroloman & Arrowsmith*, for defendant.

PER CURIAM. The only ground for this motion is the fact that *Nixon* v. *Stanley*, 33 Hun, 248, based upon *Swift* v. *Hart*, 12 Barb. 530, is contrary to the decision of the general term of this court in this case, and it is claimed that there is no decision of the court of appeals decisive of the question involved here; and this notwithstanding the decision of the court of appeals in *Marsden* v. *Cornel*, 62 N. Y. 219. In the latter case, that court expressly holds that, on a failure to file a true copy of a chattel mortgage, together with the statement required by law, within 30 days next preceding the expiration of the year, the mortgages cease to be valid against subsequent *bona fide* purchasers or creditors.[1] In the course of that decision, the court notices *Swift*

[1] 3 Rev. St. N. Y. (7th Ed.) 2249.